[No. B120030. Second Dist., Div. Five. June 9, 1999.]

RELIANCE NATIONAL INDEMNITY COMPANY, Plaintiff and Appellant, v.
GENERAL STAR INDEMNITY COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C.

**COUNSEL**

Boornazian, Jensen & Garthe, David J. Garthe, Jacqueline Jordan Leung and Kelly T. Nugent for Plaintiff and Appellant.

Quisenberry & Barbanel, Alan H. Barbanel and Phyllis J. Bersch for Defendant and Respondent.

**OPINION**

**TURNER, P. J.—**

## I.   INTRODUCTION

Plaintiff, Reliance National Indemnity Company (Reliance), appeals from summary judgment entered in favor of defendant, General Star Indemnity Company (General Star), on a complaint for indemnity and contribution.

Reliance seeks complete indemnity from General Star for moneys expended in defense and settlement of a lawsuit in federal court in Rhode Island. We affirm because we conclude the principal authority relied upon by Reliance, *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628-635 [119 Cal.Rptr. 449, 532 P.2d 97] (hereafter *Rossmoor*), is not controlling in this case, which involves a coverage dispute between primary and excess insurance carriers.

## II. BACKGROUND

### A. *The Parties, Policies, and the Underlying Lawsuit*

This action is based upon several insurance policies issued to Don Law Company, Inc. (Don Law) and Lollapalooza Joint Venture, a joint venture of Perry Farrell doing business as Bells Are Ringing, Inc., Ted Gardner doing business as Woomera, Inc., and William Morris Agency doing business as Morwill Entertainment, Inc. For purposes of clarity, the joint venture will be referred to as "Lollapalooza" in the balance of this opinion. Lollapalooza entered into a written contract dated June 18, 1994, with Don Law. Under the June 18, 1994, contract terms, Lollapalooza agreed to sponsor a music festival on August 3, 1994, at Providence, Rhode Island. The contract provided that it would be construed solely under the laws of the State of California. The June 18, 1994, contract required Don Law to indemnify and hold Lollapalooza harmless for personal injury loss, damage, or expense. Paragraph 21 of the contract, in which Don Law was identified as the "PURCHASER," provides: "PURCHASER hereby indemnifies and holds PRO-DUCER and ARTIST, as well as their respective agents, representatives, principals, employees, officers and directors, harmless from and against any loss, damage or expense, including reasonable attorney's fees, incurred or suffered by or threatened against PRODUCER or ARTIST or any of the foregoing in connection with or as result of any claim for personal injury or property damage or otherwise brought by or on behalf of any third party person, firm or corporation as a result of or in connection with the engagement, which claim does not result from the active negligence of the ARTIST and/or PRODUCER." It is this indemnification clause upon which Reliance relies on in large part to support its contention that *Rossmoor, supra,* 13 Cal.3d at pages 628-635, is controlling in this case.

The June 18, 1994, contract further required Don Law to purchase commercial general or public liability insurance naming Lollapalooza as an additional insured and with a combined single limit of $5 million aggregate per occurrence and $5 million total per event. Paragraph K provided: "1.

Purchaser shall secure at its sole cost and expense, Commercial General (or so-called 'Public') Liability Insurance covering any claims, liabilities, or losses resulting directly or indirectly from injuries to any person (including Bodily Injury and Personal Injury) and from any Property Damage and/or Loss in an amount of a combined single limit of Five Million Dollars ($5,000,000 U.S.D.) aggregate per occurrence and Five Million Dollars ($5,000,000 U.S.D.) aggregate per event placed with an insurance company acceptable to PRODUCER and naming PRODUCER and its principals and their respective officers, partners, principals, employees and agents as additional insureds. PURCHASER shall furnish to PRODUCER and its representative, Robertson Taylor (North America), Inc. (per address in paragraph 6 below) a copy of said Commercial General Liability policy(s) or Umbrella policy(s), if applicable, for PRODUCER's prior written approval." Paragraph 20 of the June 18, 1994, contract provided, "In the event of any inconsistency between the provisions of this contract and the provisions of any riders, addenda, exhibits or any other attachments hereto, the parties agree that the provisions most favorable to PRODUCER and ARTIST shall control." Paragraph M of the contract provided: "Except as otherwise stated herein PURCHASER assumes sole responsibility for any cost, expenses, charges, claims losses, liabilities, and/or damages directly or indirectly related to the Festival."

During the relevant time period, Reliance insured Lollapalooza with a general liability policy from January 22, 1994, to January 22, 1995. There was a limit of $1 million on the Reliance primary general liability policy. Reliance also insured Lollapalooza under an excess policy. The Reliance excess policy provided coverage once the $1 million limit on its general liability obligation was exhausted. Gulf Insurance Company (Gulf) insured Don Law under a primary policy with limits of liability of $1 million in the aggregate. Gulf named Lollapalooza as an additional insured pursuant to an endorsement and a certificate of insurance. General Star insured Don Law between May 1, 1994, and May 1, 1995, under an excess policy with limits of liability of $10 million per occurrence and aggregate. Lollapalooza was an additional insured under the General Star excess policy pursuant to the terms of section V(d). This was because Don Law was required by the June 18, 1994, written contract to provide such insurance. Lollapalooza was also an additional insured under the terms of section V(e) of the excess policy. This was because Lollapalooza was an additional insured included in the under-lying insurance provided by the Gulf policy. Lollapalooza was further named as an additional insured under the General Star excess policy under the terms of a certificate of insurance issued to Lollapalooza. The certificate of insurance referred to the General Star policy and an attached additional insured addendum.

Reliance's policy provided subrogation rights as follows: "Transfer of Rights of Recovery Against Others to Us. [¶] If the [i]nsured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The [i]nsured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them." The other insurance clause in the Reliance primary policy provided in part: "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows: [¶] a. Primary Insurance [¶] This insurance is primary except when b. below applies. If this insurance is primary our obligations are not affected unless any of the other insurance is also primary. Then, we shall share with all that other insurance by the method described in c. below. [¶] Excess Insurance [¶] This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis: [¶] . . . [¶] When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or 'suit' that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers. [¶] When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of: [¶] (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and [¶] (2) The total of all deductible and self-insured amounts under all that other insurance. [¶] We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part."

The General Star other insurance policy language was as follows: "If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance. Nothing here shall be construed to make this Policy subject to the terms, conditions, and limitations of other insurance, reinsurance or indemnity." The Reliance excess policy provided in part: "6. Other Insurance [¶] If there is any: a. other insurance; or . . . this coverage part shall apply as excess of and not contributing with such insurance."

On August 3, 1994, an audience member was injured at the festival while "crowd surfing." As a result of the injury, on May 16, 1995, plaintiffs filed a complaint for damages against a number of defendants, including Lollapalooza and Don Law, in the United States District Court in Rhode Island (the

underlying action). The complaint in the underlying action alleged that a concertgoer was injured while "crowd surfing" at the August 3, 1994, event produced by Don Law and sponsored by Lollapalooza. The underlying action was settled for $2,142,858. Reliance provided a defense to Lollapalooza and contributed $1 million to the $2,142,858 settlement of the underlying action on behalf of its insured. Reliance also paid $71,429 under the excess policy. Gulf provided a defense and exhausted its policy by contribution of $1 million towards settlement on behalf of Don Law and Lollapalooza. General Star contributed $71,429.

After the underlying action settled, Reliance filed this lawsuit in which it was alleged that Lollapalooza was not obligated to pay any of the damages in the Rhode Island federal district court litigation. The first amended complaint, which is the operative pleading, named as defendants, General Star and Gulf. Gulf, which settled with Reliance, is not a party to this appeal. Reliance alleged causes of action for declaratory relief as to the duty to defend and indemnification (first and third) and money had and received (second). Reliance alleged that Don Law owed a duty to indemnify Lollapalooza for "personal injury loss, damage or expense" under the aforementioned terms of the June 8, 1994, contract to provide production services for the festival. Reliance asserted it was subrogated to the indemnification rights of its insured, Lollapalooza, under the terms of the June 18, 1994, contract. It was alleged Lollapalooza's coverage under the Gulf and General Star polices should have been primary to both the general liability and excess Reliance policies. Reliance alleged it had no duty to indemnify Lollapalooza until General Star and Gulf had paid their combined policy limits of $11 million. General Star cross-complained against Reliance. This cross-complaint sought a declaration that General Star's duty to indemnify the plaintiff in the underlying action did not arise until after the primary policies of Reliance and Gulf were exhausted.

## B. *The Summary Judgment Motion*

Reliance and General Star brought cross-motions for summary judgment. Reliance relied primarily upon the decision of *Rossmoor, supra,* 13 Cal.3d at pages 628-635, a case involving an indemnification and subrogation dispute involving two primary insurers. Reliance contends it was entitled to summary judgment because its policy was in excess of the Gulf and General Star policies under the indemnification provisions of the contract between the insureds, as well as under the terms of the insurance agreements. In other words, Reliance argued, apart from language in the various insurance agreements, it was entitled to reimbursement from the two other carriers because

Don Law agreed to indemnify Lollapalooza for any personal injury loss. General Star contended summary judgment should be granted in its favor under the clear and unambiguous terms of the policies, which provided that the obligations of Reliance and Gulf were primary and General Star's duty was only in excess.

The trial court granted General Star's summary judgment motion. The order granting the summary judgment motion concluded that there were no triable issues of material fact. The issue before the trial court was the extent of the liability that General Star agreed to assume and the degree to which its policy included or excluded certain rights and obligations. The trial court rejected Reliance's contention that *Rossmoor, supra,* 13 Cal.3d at pages 628-635 controlled. The trial court concluded that *Rossmoor* did not apply and that the plain language of the policies controlled. The trial court's order stated: "The language of the four policies is clear and unambiguous and leads to the ineluctable conclusion that General Star issued a policy that provides coverage to Lollapalooza that applies excess to the Reliance Primary Policy and equally with the Reliance Umbrella Policy. General Star's policy language also makes it clear that the terms and conditions of the policy cannot be altered by any other agreement, specifically, the indemnity agreement between Lollapalooza and Don Law. Lollapalooza and Don Law entered into a contract which consisted of a [two]-page contract and a rider ('the Lollapalooza-Don Law Contract'). The contract contains an indemnity agreement between Lollapalooza and Don Law. No determination was ever made in the *Underlying Action* with regard to the respective liability of either Lollapalooza or Don Law or whether the indemnity agreement was applicable. Neither Reliance nor General Star were parties to the Lollapalooza-Don Law Contract and, therefore, are not bound by that contract. Accordingly, even though the case of *Rossmoor* is cited repeatedly and extensively by Reliance, that case simply does not apply to this dispute between two carriers for Lollapalooza. There is nothing that can make any of the policies at issue subject to the contractual obligations to which these carriers were not parties. [¶] In addition, as mentioned, General Star's policy unequivocally precludes modification or alteration of its terms or conditions by any other indemnity agreement. If Lollapalooza or Don Law had a problem with the specific terms and conditions of General Star's policy as an excess carrier not subject to variation by some other agreement, they had the opportunity to take it up at the time General Star issued the policy or when preparing the Don Law-Lollapalooza Contract. That was not done. [¶] Furthermore, this is not a subrogation case. Reliance has not sued Don Law, and concedes that Don Law's liability to Lollapalooza has never been established. Accordingly, this is not a case of a carrier, as a subrogee,

seeking recovery from a third-party tortfeasor pursuant to an express indemnity agreement or by way of equitable indemnity. That just was not the question at issue in this case. [¶] Based on the above, General Star is entitled to a declaration on Reliance's complaint that the Reliance Primary Policy and the Gulf Policy are primary to General Star and that Reliance and Gulf had to share indemnity obligations in the *Hayes Action* until the limits of their primary policies were exhausted. Once the primary limits were exhausted then Reliance (pursuant to the Reliance Excess Policy) and General Star stand equally as excess carriers. General Star is entitled to a declaration on the cross-complaint that as excess insurers of Lollapalooza, once the limits of Reliance's Primary Policy and Gulf's Policy exhausted, Reliance and General Star were obligated to share *pro rata* any remaining liability of Lollapalooza." (Original italics.)

The trial court entered judgment in favor of General Star and against Reliance. This timely appeal followed.

## III. DISCUSSION

### A. *Standard of Review*

Summary judgment is granted when the moving party establishes that there are no triable issues of any material fact. A summary judgment motion is directed to the issues framed by the pleadings. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *Addy* v. *Bliss & Glennon* (1996) 44 Cal.App.4th 205, 215 [51 Cal.Rptr.2d 642]; *Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 536 [249 Cal.Rptr. 5].) Further, the moving party must establish he or she is entitled to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) A defendant proves a claim has no merit if he or she establishes one or more of the elements of the cause of action cannot be separately established. (Code Civ. Proc., § 437c, subd. (n)(1).) Code of Civil Procedure section 437c, subdivision (o)(2) provides: "For purposes of motions for summary judgment and summary adjudication: . . . A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials

of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (*Green* v. *Ralee Engineering Co.* (1998) 19 Cal.4th 66, 72 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) ■ An appellate court reviews the trial judge's decision to grant summary judgment de novo. (*Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; *Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 929 [30 Cal.Rptr.2d 440, 873 P.2d 613].) The trial judge's stated reason for granting summary judgment is not binding on us because we review its ruling, not its rationale. (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356]; *Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

The issue of whether plaintiff is entitled to indemnification requires an interpretation of the insurance policies. ■ The standard of review of an insurance policy has been described by the California Supreme Court as follows: "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. (See *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 . . . (*AIU*).) The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' (*Id.*, § 1649; see *AIU, supra*, 51 Cal.3d at p. 822.) This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.' (*AIU, supra*, [51 Cal.3d] at p. 822.) Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. (See *AIU, supra*, [51 Cal.3d] at p. 822.) [¶] In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916-917 & fn. 7 . . . .) This is because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract*.' (*Id.* at p. 916, fn. 7, italics added; cf. Civ. Code, § 1641.)" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545], original italics; accord, *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994)

9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].) We review the unambiguous terms of the insurance agreement de novo. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 502 [99 Cal.Rptr. 617, 492 P.2d 673]; *U.S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65]; *Hughes* v. *Mid-Century Ins. Co.* (1995) 38 Cal.App.4th 1176, 1181-1182 [45 Cal.Rptr.2d 302].)

### B. *General Star's Coverage Was Excess to Any Primary Insurers*

#### 1. *The limited duties of excess carriers and various theories of shifting financial responsibility for a loss*

##### a. *Introduction*

In this case, the undisputed facts established that Reliance insured Lollapalooza with a primary policy with coverage up to $1 million. Reliance also insured Lollapalooza with an excess insurance policy. Gulf insured Don Law and Lollapalooza as an additional insured under a primary policy with coverage to $1 million. General Star insured Don Law and Lollapalooza as an additional insured under an excess policy with limits of liability of $10 million per occurrence and in the aggregate. Both the Reliance and the General Star policies contained other insurance clauses. Reliance's other insurance clause stated that it was primary. General Star's policy stated that it was in excess of the other insurance afforded by its policy. The General Star other insurance policy language provided: "If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance. Nothing here shall be construed to make this Policy subject to the terms, conditions, and limitations of other insurance, reinsurance or indemnity." Thus, under the express terms of its insurance policy, General Star's coverage was excess.

Reliance's primary argument is the trial court erred in granting summary judgment in favor of General Star because as a matter of law, under the June 18, 1994, contract, Don Law was to provide full indemnity to Lollapalooza and its insurer for any damages arising from the festival.[1] General Star counters that the indemnity agreement does not supersede the explicit language of the relevant policies. Those policies provided that Reliance would

---

[1] Plaintiff also contended there was insufficient evidence proffered establishing any active negligence on the part of Lollapalooza. The distinction between active and passive negligence is discussed and debated at length by the parties. Courts construe general indemnity provi-

be a primary insurer and that General Star's coverage would be excess to all other insurance.

### b. *The two levels of insurance*

■ Under well-settled insurance principles, there are two levels of insurance coverage, primary and excess. (*Community Redevelopment Agency* v. *Aetna Casualty & Surety Co.* (1996) 50 Cal.App.4th 329, 337-338 [57 Cal.Rptr.2d 155]; *North River Ins. Co.* v. *American Home Assurance Co.* (1989) 210 Cal.App.3d 108, 112 [257 Cal.Rptr. 129].) The Court of Appeal has noted: "Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. . . . [¶] 'Excess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 597-598 [178 Cal.Rptr.2d 908], italics omitted; see also *North River Ins. Co.* v. *American Home Assurance Co., supra*, 210 Cal.App.3d at p. 112.)

### c. *The role of contractual language in a policy*

■ The contractual terms of insurance coverage are enforced whenever possible. (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra*, 126 Cal.App.3d at p. 599; *General Ins. Co.* v. *Truck Ins. Exch.* (1966) 242 Cal.App.2d 419, 422 [51 Cal.Rptr. 462].) This includes excess insurance provisions in policies, "even in situations where to do so will be inconsistent with proration provisions in other policies." (*Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318, 328 [54 Cal.Rptr. 385, 419 P.2d 641], disapproved on another point in *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 199 [84 Cal.Rptr. 705, 465 P.2d 841]; accord, *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 367-369 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75].) The Courts of Appeal

---

sions to provide indemnification for losses resulting from an indemnitee's passive negligence; however, as a general rule courts have refused to allow indemnification for active negligence. (*Rossmoor, supra*, 13 Cal.3d at p. 628; *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 962 [59 Cal.Rptr. 809, 429 P.2d 129].) In *Rossmoor*, the Supreme Court has noted: "[W]hether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Rossmoor, supra*, 13 Cal.3d at p. 633.) Thus, the active-passive distinction is not wholly dispositive and the general rule may not always apply. (*Rooz* v. *Kimmel* (1997) 55 Cal.App.4th 573, 584-585 [64 Cal.Rptr.2d 177]; *Hernandez* v. *Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1820-1822 [34 Cal.Rptr.2d 732].) Here, we do not discuss the issue of Lollapalooza's negligence because the appeal may appropriately be resolved on other grounds.

have held: "It is settled under California law that an excess or secondary policy does not cover a loss, nor does any duty to defend the insured arise until *all* of the primary insurance has been exhausted." (*Community Redevelopment Agency* v. *Aetna Casualty & Surety Co.*, *supra*, 50 Cal.App.4th at p. 339, original italics; accord, *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.*, *supra*, 126 Cal.App.3d at p. 600.)

### d.   *Other insurance clauses*

■   It has been held that an "other insurance" clause dispute cannot arise between excess and primary carriers but only between insurers on the same level. (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.*, *supra*, 126 Cal.App.3d at pp. 597-598; see also *North River Ins. Co.* v. *American Home Assurance Co.*, *supra*, 210 Cal.App.3d at p. 114; Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1997) ¶ 8:12, p. 8-3.) This is because an "other insurance" clause is only relevant when two or more policies apply at the same level. (*Ibid.*; see *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1304-1307 [77 Cal.Rptr.2d 296].) Notwithstanding this authority, a dispute has arisen between Reliance, a primary carrier, as to sums of money it paid on behalf of Lollapalooza, and General Star, an excess carrier based upon "other insurance" clauses and an indemnification contract between two insured parties.

### e.   *Subrogation and contribution*

■   The Court of Appeal in *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th at pages 1291-1292, explained the concepts and confusion surrounding the theories of subrogation and contribution at length as follows: "As one California appellate court has opined, '[i]t is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, contribution, co-obligation and joint tortfeasorship.' [Citation.] It is also difficult to think of two legal concepts that have caused more confusion and headache for both courts and litigants than have contribution and subrogation. [Citation.] Although the concepts of contribution and subrogation are both equitable in nature, they are nevertheless distinct. [Citations.] [¶] Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the 'subrogee' is equitably *subrogated* to the claimant (or 'subrogor'), and succeeds the subrogor's rights against the obligor. [Citation.] In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid.

[Citations.] ' "As now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." [Citations.]' [Citation.] [¶] . . . [¶] The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. [Citations.]" (Fn. omitted, original italics.) ■ The Court of Appeal continued: "Equitable contribution is entirely different. It is the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor who shares* such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify of defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against is coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. [Citations.]" (*Id.* at pp. 1293-1294, fn. omitted, original italics.) As a general rule, there is no contribution between a primary and an excess carrier. (*Id.* at p. 1294, fn. 4; *Herrick Corp.* v. *Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 759 [34 Cal.Rptr.2d 844]; 16 Couch on Insurance (2d ed. 1983) Contribution & Apportionment, §§ 62:142-62:144, pp. 611-615.) However, where different insurance carriers cover differing risks and liabilities, they may proceed against each other for reimbursement by subrogation rather than by contribution. (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 917 [164 Cal.Rptr. 709, 610 P.2d 1038]; *Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc.* (1997) 52 Cal.App.4th 553, 556-558 [60 Cal.Rptr.2d 591]; *State Farm & Casualty Co.* v. *Cooperative of American Physicians, Inc.* (1984) 163 Cal.App.3d 199, 204-205 [209

Cal.Rptr. 251]; see also *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th at pp. 1298-1299.)

## 2. *Rossmoor and Its Application to the Present Case*

Reliance's claim is based upon the Supreme Court's decision in *Rossmoor*, *supra*, 13 Cal.3d at pages 628-635. In *Rossmoor*, a real property owner and a sewage facility contractor entered into a contract. Under the terms of the agreement, the contractor agreed to indemnify and hold the owner harmless against all claims for damage to persons or property. (*Rossmoor*, *supra*, 13 Cal.3d at pp. 625-626.) The contractor complied with an agreement that also required it to obtain insurance for itself. The contractor was also required to name the owner in the policy as an additional insured. However, the owner also had independent coverage under a policy previously issued by its own insurer. (*Ibid.*) Both policies contained "other insurance" clauses. They stated that an apportionment would be made if the insured had other insurance against a loss covered by the policy. (*Id.* at p. 626.) The owner of real property was held liable for injury to and death of employees resulting from a cave-in of an unshored trench. Thereupon the owner and its insurer sought indemnity from the contractor and its liability insurer. (*Id.* at p. 627.) The contractor's insurer cross-complained against the owner's insurer. The cross-complaint sought apportionment of sums paid under the "other insurance" clauses of the various policies. (*Ibid.*)

The Supreme Court determined, based on the trial court's findings, that the owner was, at most, passively negligent. (*Rossmoor*, *supra*, 13 Cal.3d at p. 629.) *Rossmoor* concluded that the distinction between active and passive negligence remained viable. (*Ibid.*) Citing *Markley* v. *Beagle*, *supra*, 66 Cal.2d at page 961, the *Rossmoor* court held: "Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity. [Citation.]" (*Rossmoor*, *supra*, 13 Cal.3d at p. 628.) Further, there was no apportionment of the loss between the insurers pursuant to the "other insurance" clauses. The owner's insurance company was subrogated to its insured's right of indemnification against the contractor and its insurer. The subrogation rights extended to sums paid in satisfaction of a tort judgment against the owner. This was because to hold otherwise would have effectively negated the indemnity agreement and would have imposed liability on the owner's insurer when it had bargained with the contractor to avoid such a result. (*Id.* at pp. 634-635.) Thus, *Rossmoor* was an action between the insureds on a contract for indemnity in which apportionment of loss between two primary carriers was raised in a cross-action. Further, *Rossmoor* had sued the carrier of Pylon.

Here, Reliance argues that, under *Rossmoor*, it was subrogated to a right of indemnification based upon the contract between Lollapalooza and Don

Law. As noted above, reimbursement is allowed under a theory of equitable subrogation that applies to insurers that did not cover the same risks and liabilities with respect to the same insured. (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc., supra,* 26 Cal.3d at p. 917; *Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th at pp. 556-558; *State Farm & Casualty Co.* v. *Cooperative of American Physicians, Inc., supra,* 163 Cal.App.3d at pp. 204-205; see also *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* 65 Cal.App.4th at pp. 1298-1299.)

In an equitable subrogation case, the Court of Appeal has explained: "[T]he insurer must establish that (1) the insured suffered a loss for which the defendant is liable, *either* (a) because the defendant is a wrongdoer whose act or omission caused the loss *or* (b) because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer has compensated the insured for the loss for which the defendant is liable; (3) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted had it not been compensated by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (5) justice requires that the loss should be shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount paid to its insured. [Citations.]" (*Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th at pp. 555-556, original italics.)

Several points warrant emphasis in resolving this issue. First, based upon equitable principles, the duty to contribute applies to insurers that share the same level of obligation on the risk as to the same insured. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at pp. 367-368; *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1294, fn. 4.) However, generally, as noted previously, there is no contribution between a primary and excess carrier without a specific agreement to the contrary. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at p. 367 [consent]; *Fireman's Fund Ins.* v. *Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1294, fn. 4.) In equitable contribution cases, the courts enforce primary and excess provisions in insurance contracts as long as the rights of the policyholder are not adversely affected. (*Signal Companies, Inc.* v. *Harbor Ins. Co.; supra,* 27 Cal.3d at pp. 367-369; *Pacific Employers Ins. Co.* v. *Maryland Casualty Co., supra,* 65 Cal.2d at p. 328; *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* 65 Cal.App.4th at pp. 1304-1305; *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co., supra,* 126 Cal.App.3d at pp. 599-600; *Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 835-836 [192 Cal.Rptr. 207]; *General Ins. Co.* v. *Truck Ins. Exch., supra,* 242 Cal.App.2d at pp. 422-423.) These insurers do not share

the same level of coverage and there is no right of contribution established. As noted above, under both the relevant policies, Reliance's obligation was primary and General Star's was excess. General Star had no obligation for any part of the loss, damage, or defense covered by the other primary insurance. This is a materially distinguishing characteristic between the present litigation and *Rossmoor*. (*Rossmoor*, *supra*, 13 Cal.3d at pp. 634-635.)

Second, contrary to Reliance's assertion otherwise, the Supreme Court's decision in *Rossmoor* did not establish that in all cases where a contract for indemnification exists an insurer is entitled to bring a subrogation action on the agreement. No doubt, *Rossmoor* concluded the owner's insurer in the case before it was subrogated to the rights of its insured under the indemnification contract. However, *Rossmoor* did not purport to establish a general rule that a contractual indemnification agreement between an insured and a third party takes precedence over well-established general rules of primary and excess coverage in an action between insurers repeatedly articulated by California appellate courts. This is particularly true in this case because General Star's policy specifically states: "Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance, reinsurance or indemnity."

Third, there is a division of decisional authority on whether an insurer is entitled to subrogation against a party who by a separate contract has agreed to assume responsibility for the same loss and is not responsible for causing the loss. The test as to whether the party has the right to maintain the action for subrogation "involves a consideration of, and must necessarily depend upon the respective equities of the parties." (*Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 102 [77 P.2d 1084]; *Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc.*, *supra*, 52 Cal.App.4th at p. 558; *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 514-515 [64 Cal.Rptr. 187]; *Meyer Koulish Co.* v. *Cannon* (1963) 213 Cal.App.2d 419, 424 [28 Cal.Rptr. 757].) As the cases below illustrate, it is a matter of applying the equities of the parties to the facts of the case to determine the superior and inferior positions of the parties.

In *Meyers* v. *Bank of America etc. Assn.*, *supra*, 11 Cal.2d at pages 102-103, an insurer compensated an employer for losses resulting from an employee's check forgery. The Supreme Court determined the insurer's equities were not superior to those of the bank which cashed the forged checks. (*Ibid.*) In *Patent Scaffolding Co.* v. *William Simpson Constr. Co.*, *supra*, 256 Cal.App.2d at page 515, three insurers brought an action for equitable subrogation in their insured's name against a contractor which breached an agreement to obtain fire insurance. The Court of Appeal refused

to allow the action for equitable subrogation for breach of a duty to indemnify or to obtain fire insurance. Citing *Meyers* v. *Bank of America etc. Assn.*, *supra*, 11 Cal.2d at page 102, the Court of Appeal in *Patent Scaffolding* determined that the insurer's equities were not superior to those of the co-indemnor that had breached its duty to indemnify the insured against the loss because the breach did not cause the fire. In *Fireman's Fund Ins. Co.* v. *Morse Signal Devices* (1984) 151 Cal.App.3d 681, 686-688 [198 Cal.Rptr. 756], the Court of Appeal determined that an insurer which paid for the fire and burglary losses was not equitably entitled to subrogation of its insured's claims against an alarm company for breach of contract in maintaining the alarm. (*Ibid.*) In *Meyer Koulish Co.* v. *Cannon*, *supra*, 213 Cal.App.2d at page 423, the manufacturer of jewelry consigned some of its jewelry to the defendant under an agreement that imposed all risk of loss on the defendant. After the jewelry was stolen, the manufacturer was paid by its insurer which then sued the defendant for subrogation. (*Ibid.*) The Court of Appeal determined that the fact the defendant did not cause the wrongdoing did not enable him to escape the primary responsibility for the loss. In *Fireman's Fund Ins. Co.* v. *Wilshire Film Ventures, Inc.*, *supra*, 52 Cal.App.4th at pages 556-558, the Court of Appeal determined an insurer was entitled to equitable subrogation against the lessee of camera equipment which refused to fulfill its obligation under the lease to pay the full value of equipment which was stolen from the lessee's truck.

Under the undisputed circumstances of this case, we cannot conclude that the equities permit recovery in this case. As noted above, Reliance's primary contention is that *Rossmoor* supports the theory that in *all* cases an indemnification agreement allows an insurer to be subrogated to the rights of its insured, even against an insurance company providing excess coverage. It is undisputed that the parties to the indemnity agreement are not present and this is an action between primary and excess carriers as identified by their policies. The risks involved in providing primary coverage are different from those involved in issuing an excess policy. These differences are reflected in part by the premium costs. As *Rossmoor* noted in discussing the risks of two primary insurers: "It appears that both [insurers] calculated and accepted premiums with knowledge that they might be called upon to satisfy a full judgment. There is no evidence that either company knew there was or would be other insurance when they issue the policies." (*Rossmoor*, *supra*, 13 Cal.3d at p. 634.) By contrast, an excess insurer does not accept premiums with the knowledge that it will be called upon to satisfy a full judgment. The California Supreme Court has noted: " 'The policyholder pays for two kinds of liability coverage, each at a different rate. The premium charged by the primary insurer supports more localized claims adjustment facilities than those of the excess carrier. It takes into account costs of defense, including

legal fees, which the primary insurer normally provides.' " (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at p. 365, quoting *Transit Casualty Co.* v. *Spink Corp.* (1979) 94 Cal.App.3d 124, 135 [156 Cal.Rptr. 360], disapproved on another point in *Commercial Union Assurance Co.* v. *Safeway Stores, Inc., supra,* 26 Cal.3d at p. 921; see *Olympic Ins. Co.* v. *Employers Surplus Lines, Inc., supra,* 126 Cal.App.3d at p. 598, fn. 2.) If we were to accept the arguments of Reliance, the basic rules construing primary and excess policies would be altered. A primary insurer would be allowed to charge a higher premium for insuring a greater risk; however, then the primary insurer would be allowed to shift the loss to an excess carrier which charged a lower premium. This is not a case between two primary carriers which have each received premiums for bearing the loss which ultimately occurred; rather, this is an action between an excess and a primary carrier. While the loss at issue must be borne by Reliance, it is nothing more than what is bargained for, particularly given the absence of any evidence that it calculated its premium with an understanding that an indemnity agreement would exist between its insured and Don Law. Under the circumstances, *Rossmoor,* a case involving a subrogation and indemnity dispute between two primary carriers and their insured is not controlling in the present case. Therefore, the trial court properly determined summary judgment should be granted in favor of General Star.

C.  *The Amounts Paid in Excess of the Primary Policy by the Parties**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV.  DISPOSITION

The judgment is affirmed. Defendant, General Star Indemnity Company, shall recover its costs on appeal from plaintiff, Reliance National Indemnity Company.

Grignon, J., and Armstrong, J., concurred.

---

*See footnote, *ante*, page 1063.