**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

OCT 30 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VIZIO, INC., | No.    22-55755 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-06864-ODW-AS |
| v. | |
| ARCH INSURANCE COMPANY, et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted October 3, 2023
San Francisco, California

Before:  McKEOWN, CALLAHAN, and LEE, Circuit Judges.

In this insurance coverage case, Vizio appeals the district court's order

granting Arch Insurance's motion to dismiss.  We have jurisdiction under 28 U.S.C.

§§ 1332, 1367, and 2201.  We affirm on other grounds.

Arch issued an insurance policy to Vizio and provided coverage excess to

Navigators Insurance's primary policy, meaning that Arch only covered losses that

---

*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

exceeded the $5 million limit of the Navigators Policy. The Arch Policy "follows form" to Navigators' policy, so it has the same terms except for those specifically contradicted by the Arch Policy. Vizio also had a separate line of general liability coverage with Chubb.

After consumers filed class action lawsuits against Vizio in connection with its Smart TV products (the "Smart TV Litigation"), Vizio notified both Navigators and Arch of its potential insurance claims in a February 2016 email. Arch requested more information, while Navigators denied coverage, citing a policy exclusion. Vizio twice forwarded Navigators' denial letter to Arch, but Vizio never provided Arch with any substantive updates about the Smart TV Litigation. Arch, in turn, failed to convey a coverage decision, though internal records show that Arch decided to deny coverage. About two years later, without seeking or receiving Arch's consent, Vizio settled the Smart TV Litigation for $17 million.

The district court dismissed Vizio's fourth amended complaint with prejudice, holding (among other things) that Vizio failed to properly notify Arch of its claim after the underlying policy limit was exhausted. We review de novo a district court's decision to grant a motion to dismiss. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). We also review the district court's "interpretation of an insurance policy" and "interpretation of [California] law de novo." *LSCC LLC v. Wilco Life Ins. Co.*, 829 F. App'x 245, 246 (9th Cir. 2020).

2

**1.** <u>The district court erred in holding that providing notice prior to exhaustion was improper.</u> The Arch Policy requires that Vizio "give notice to the Insurer of any Claim or potential Claim in conformance with the notice provisions of the Primary Policy except that such notice shall be delivered to" Arch. Navigators' Policy, in turn, dictates that Vizio must "give the Insurer notice in writing of any Claim which is first made during the Policy Period as soon as practicable after the… Company… becomes aware of such Claim."

The district court conflated two issues: (1) whether Vizio provided proper notice to Arch of its claim and (2) whether Arch, as an excess insurer, had to indemnify Vizio for the Smart TV Litigation at the time that notice was given. Addressing the second issue, the district court rightly determined that Arch at that time had no duty to defend or indemnify because the primary policy limit had not yet been exhausted. But it does not follow from that premise that Vizio's notice was insufficient. Just because Arch was not required to indemnify Vizio when it received notice of the Smart TV Litigation does not mean that Vizio did not fulfill its own obligation to notify Arch of any "Claim or potential Claim." The Arch Policy does not require that notice of a claim follow exhaustion of the underlying Navigators Policy. So Vizio's February 2016 email was adequate notice.

**2.** <u>Vizio failed to comply with the consent provision before settling.</u> Vizio admits that it did not obtain Arch's consent prior to settling the Smart TV Litigation

as required under the Arch Policy. Vizio argues that it was not required to obtain Arch's consent because (1) the Arch Policy did not incorporate the Navigators Policy's consent provision, (2) the Arch Policy conflicts with and therefore supersedes the Navigators consent provision, and (3) Arch's contractual breach excuses Vizio's breach. Each argument fails.

First, Vizio argues that its contract with Arch did not incorporate the consent provision. It suggests that "only 'coverage' follows form to Navigators' Policy, and nowhere does Arch's Policy establish 'consent' to be a prerequisite to coverage." But the full text of the provision belies that understanding: "Except as otherwise provided in this Policy, coverage under this policy shall follow form to, and apply in conformance with, the provisions of the Primary Policy." "A following form excess policy has the same terms and conditions as the underlying primary policy." *Haering v. Topa Ins. Co.*, 198 Cal. Rptr. 3d 291, 296 (Ct. App. 2016). So the Navigators Policy's consent provision is incorporated into the Arch Policy.

Second, Vizio argues that Arch's policy conflicts with Navigators' policy. Not so. Vizio claims that Arch's policy "contains its own provision regarding 'Duties In The Event Of A Claim,'" which does not require Vizio to receive Arch's consent prior to settlement. But this provision merely ensures that Vizio would notify Arch of its claims. It does not conflict with the consent provision in the Navigators Policy.

Lastly, Vizio argues that, if the consent provision applies, Vizio was excused from performing because Arch allegedly breached the policy first by not properly responding to Vizio's February 2016 email. But Vizio fails to allege facts that would plausibly show that Arch breached any of its duties under the policy. Moreover, even if Arch breached the policy as alleged, this would not excuse Vizio from seeking Arch's consent to the settlement.

Insurance contracts in the state of California incorporate the terms of California's insurance regulations. *City of Shasta Lake v. Cnty. of Shasta*, 88 Cal. Rptr. 2d 863, 873 (Ct. App. 1999). Vizio relies on California Code of Regulations Title 10, Section 2695.7(b) for the proposition that an insurer's failure to accept or deny a claim within 40 days of tender is a breach of the insurance policy. But Section 2695.7(b) only applies after an insurer receives a "proof of claim," which is defined as evidence of a claim that "reasonably supports the magnitude or the amount of the claimed loss." 10 C.C.R. § 2695.2(s). In contrast, a "notice of claim" is defined as a "notification to an insurer . . . that reasonably apprises the insurer that the claimant wishes to make a claim against a policy . . . and that a condition giving rise to the insurer's obligations under that policy or bond may have arisen." 10 C.C.R. § 2695.2(n).

Vizio's February 2016 email to Arch is a notice of claim, not a proof of claim. That email did not "reasonably support[] the magnitude or the amount of the claimed

5

loss"—nor could it because the lawsuit had just been filed. 10 C.C.R. § 2695.2(s). Vizio's complaint even characterizes the February 2016 email as a notice of claim. And in accordance with Section 2695.5(e)'s provision for a notice of claim, Arch responded in less than a week that it had begun an investigation and requested updates (but it never received substantive updates).

Vizio also alleges Arch breached the contract when it internally denied coverage and never informed Vizio. *See* Cal. Code of Regs. § 2695.7(b)(1). Vizio cites *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1544 (2003) for the proposition that an "insurer's breach of its policy renders a prior written consent provision unenforceable." *Golden Eagle*, however, holds that "it is only when the insured has requested and been denied [coverage] by the insurer that the insured may ignore the provisions forbidding the incurring of defense costs without the insurer's prior consent." *Id*. at 1547. In other words, Arch's alleged breach would only excuse Vizio's non-consensual settlement if Vizio had requested and been denied coverage. But Arch never informed Vizio that it would deny coverage, and Vizio never followed up or provided Arch with any substantive updates about the Smart TV Litigation. Thus, Vizio, having never been notified of a denial of coverage, still had an obligation to obtain Arch's consent to any settlement, notwithstanding Arch's alleged breach. Without notice, Arch was denied the opportunity to participate in

6

the settlement negotiations, which the insurance contract established as a prerequisite to Arch's duty to pay.

**3.** Vizio's claim for the breach of the implied covenant of good faith and fair dealing fails. Under California law, "without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008). Because Vizio breached the policy by not soliciting Arch's consent prior to settlement, no benefits were due, and Arch therefore did not breach the contract.

**4.** Vizio's equitable contribution claim fails. Equitable contribution "is the right to recover, not from the party primarily liable for the loss, but from a co-obligor who shares such liability with the party seeking contribution." *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303 (Ct. App. 1998) (emphasis deleted). "As a general rule, there is no contribution between a primary and an excess carrier." *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*, 85 Cal. Rptr. 2d 627, 635 (Ct. App. 1999) (citing *id*. at 304 n.4).

Chubb—Vizio's other *primary* insurer that contributed to the settlement and defense costs—assigned Vizio its equitable contribution claim against Arch, an *excess* carrier on a separate line of coverage. This claim fails because there is no right of contribution when the insurers do not share the same level of coverage. *Reliance*, 85 Cal. Rptr. 2d at 635.

7

Vizio also argues that upon exhaustion of the Navigators Policy, Arch's policy "'becomes primary insurance' by its plain terms." But its reading conflicts with "well-settled insurance principles." *Id.* at 634. "Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability" while "'[e]xcess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Id*. (quoting *Olympic Ins. Co. v. Emps. Surplus Lines Ins. Co.*, 178 Cal. Rptr. 908, 911 (Ct. App. 1981)). Arch was indisputably an excess insurer because it only had an obligation to indemnify Vizio once the $5 million limit of the Navigators Policy was exhausted.

**AFFIRMED.**