RELIANCE INSURANCE COMPANY
(IN LIQUIDATION), a Pennsylvania
corporation, Plaintiff,

v.

THE DOCTORS COMPANY, a
California corporation,
Defendant.

No. 02–CV–159.

United States District Court,
D. Hawai'i.

Sept. 25, 2003.

Order Denying Reconsideration
Jan. 29, 2004.

Elton John Bain, Esq., Ewing M. Martin III, Esq., Kessner Duca Umebayashi Bain & Matsunaga, Honolulu, HI, Paul F. Donsbach, Esq., Christopher D. Glos, Esq., Kutak Rock LLP, Irvine, CA, for Reliance Ins. Co.

Darolyn Hatsuko Lendio, Esq., Philip W. Miyoshi, Esq., Becky T. Chestnut, Esq., McCorriston Miller Mukai MacKinnon LLP, Honolulu, HI, for The Doctors Company.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FILED ON 11/25/02, AND RECOGNIZING DEFENDANT'S CROSS–MOTION FILED ON 2/6/03 AS MOOT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FILED ON 1/8/03, AND DENYING PLAINTIFF'S MOTION FOR A CONTINUANCE UNDER FED. R. CIV. P. 56(f) RAISED IN ITS MEMORANDUM OF OPPOSITION OF 2/4/03 TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GILLMOR, District Judge.

The instant case involves a dispute between an excess insurer and a primary

insurer over a $4.3 million medical malpractice settlement.

Plaintiff Reliance Insurance Company ("Plaintiff"), the excess insurer, paid $3.3 million towards the settlement of a medical malpractice action under a reservation of rights. Defendant The Doctors Company ("Defendant" or "TDC"), the primary insurer, paid $1 million towards the settlement.

Both parties seek summary judgment. Defendant seeks summary judgment establishing that it had no obligation to pay, indemnify, or make contribution to Plaintiff for any amounts Plaintiff paid in settlement of the underlying lawsuit. It claims that it was only obligated to contribute $1 million on behalf of the insured.

Plaintiff seeks partial summary judgment on its First (Express and Equitable Subrogation), Second (Equitable Contribution), and Third (Indemnity) claims for relief. Plaintiff contends that Defendant paid $1 million towards the settlement but was legally obligated to contribute $3 million. Alternatively, Plaintiff seeks a continuance under Federal Rule of Civil Procedure 56(f) to conduct more discovery.

While the court initially had some reservations as to whether there existed any material issues of fact, a careful review of the record has laid to rest those concerns. The uncontroverted evidence demonstrates that there were claims asserted against Doctors Kubota and Pearce under the TDC policy, the doctors' limits of liability were triggered, and settlement was made on their behalf.

For reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment, recognizes as MOOT Defendant's Cross–Motion for Summary Judgment as to the claim for breach of the covenant of good faith and fair dealing and GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment, and DENIES Plaintiff's Motion for a Continuance under Fed. R.Civ.P. 56(f).

## PROCEDURAL BACKGROUND

On March 18, 2002, Plaintiff filed a Complaint for Express and Equitable Subrogation, Equitable Contribution, Indemnity and Declaratory Relief.

On November 25, 2002, Defendant filed Defendant's Motion for Summary Judgment and a separate and concise statement of facts.

On January 8, 2003, Plaintiff filed a Motion of Plaintiff Reliance Insurance Company (In Liquidation) for Partial Summary Judgment ("Plaintiff's Motion for Partial Summary Judgment") and a separate and concise statement of facts. Also on that date, Plaintiff filed a Supplemental Declaration of Paul F. Donsbach; Declaration of Richard D. Hoffman; and Plaintiff's Notice of Lodging of Foreign Authorities in Support of Motion for Partial Summary Judgment.

On January 9, 2003, Plaintiff filed a Declaration of Paul F. Donsbach; Exhibits 1–32, (33 Filed Under Seal), Exhibits 34–39, (40 Filed Under Seal) and filed sealed Exhibits 33 and 40 under seal.

On February 6, 2003, Plaintiff filed a memorandum in opposition to Defendant's Motion for Summary Judgment and a separate and concise statement of facts in opposition, which consisted of two volumes. Also on that date, Plaintiff filed a Notice of Lodging of Foreign Authorities in Support of Opposition to Defendant The Doctors' Company's Motion for Summary Judgment.

On February 6, 2003, Defendant filed a memorandum in opposition to Plaintiff's Motion for Partial Summary Judgment, a separate and concise statement of facts in

opposition and a Cross–Motion for Summary Judgment on Plaintiff's claim for breach of the covenant of good faith and fair dealing.

On February 11, 2003, Defendant filed an original declaration by Lynn F. York in support of its separate and concise statement of facts in opposition to Plaintiff's Motion for Partial Summary Judgment.

On February 13, 2003, Defendant filed a reply memorandum in support of its Motion for Summary Judgment.

On February 13, 2003, Plaintiff filed a reply memorandum in support of its Motion for Partial Summary Judgment and a Reply Declaration of Paul F. Donsbach.

On February 24, 2003, Defendant's Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, and Plaintiff's alternate motion for a continuance under Fed.R.Civ.P. 56(f) were heard. The Court took the motions under submission and ordered the parties to submit any further documentation regarding the state court settlement proceedings within three days of notification from the state court.

On March 13, 2003, Defendant filed its Submission of Documents Received as a Result of Reliance Insurance Company's (In Liquidation) Motion to Modify Minute Order Entered on November 10, 1999 to Authorize Disclosure of Settlement Terms Placed on the Record.

On March 14, 2003, Plaintiff filed a First Amended Complaint for Express and Equitable Subrogation, Equitable Contribution, Indemnity, Declaratory Relief, and Breach of the Implied Covenant of Good Faith and Fair Dealing. The amended complaint added a claim for Breach of the Implied Duty of Good Faith and Fair Dealing. Plaintiff withdrew its claim for Breach of the Implied Covenant of Good Faith and Fair Dealing on August 20, 2003.

On March 14, 2003, Plaintiff filed a Supplemental Declaration of Paul F. Donsbach Regarding February 24, 2003 Minute Order on Defendant The Doctors' Company's Motion for Summary Judgment and Plaintiff Reliance Insurance Company's (In Liquidation) Motion for Partial Summary Judgment.

On March 17, 2003, Defendant filed an objection to Plaintiff's supplemental declaration filed on March 14, 2003. Defendant requested that the Court strike or decline to consider paragraph five of Plaintiff's supplemental declaration because further briefing on the state settlement terms was not authorized by the Court. In its February 24, 2003 minute order, the Court directed the parties to file any further documentation regarding the state court settlement proceedings. Plaintiff's supplemental declaration is consistent with the Court's order. Paragraph five of the supplemental declaration merely reiterates Plaintiff's prior request for a continuance. The Court therefore declines to strike paragraph five of Plaintiff's supplemental declaration filed on March 14, 2003.

On March 25, 2003, Defendant filed a Counterclaim for setoff to Plaintiff's First Amended Complaint Filed March 14, 2003. On June 17, 2003, the Court issued an order dismissing Defendant's Counterclaim.

On May 27, 2003 a hearing was held regarding the settlement that had taken place in state court in the underlying case.

On June 6, 2003, Plaintiff and Defendant filed state court documents pursuant to the Court's request at the May 27, 2003 hearing.

On June 16, 2003, Plaintiff filed a Supplemental Declaration of Paul F. Donsbach in Support of Plaintiff Reliance Insurance

Company's (In Liquidation) Motion for Partial Summary Judgment. On June 18, 2003, Plaintiff filed the original signature page to the supplemental declaration.

On June 20, 2003, Defendant filed a Submission of Deposition Transcript of L. Richard Fried, Jr, the Attorney for the Plaintiffs in the state court proceeding.

On August 4, 2003, Defendant lodged an Ex Parte Application to Shorten Time for Hearing on its Motion for Partial Summary Judgment concerning Plaintiff's bad faith claim. On August 13, 2003, the Ex Parte Application to Shorten Time to hear the motion and Defendant's Motion for Partial Summary Judgment were filed. Pursuant to a telephone conference on August 14, 2003, Defendant withdrew its Motion for Partial Summary Judgment.

On August 20, 2003 Plaintiff filed a Notice of Withdrawal of Fifth Claim For Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing, rendering Defendant's February 6, 2003 Cross Motion for Summary Judgment MOOT.

## FACTS

In September 1996, Arsenio Magday ("Magday"), a patient at Straub Clinic & Hospital ("Straub"), suffered injuries as a result of alleged negligence by Straub and some of its physicians, including Drs. Kubota and Pearce.[1] On July 31, 1998, a claim was filed before a medical claim conciliation panel.[2]

Straub notified Plaintiff and Defendant of the claims against Straub and the physicians in a letter dated August 25, 1998.[3] The letter stated that although not named, the case was also against Drs. Kubota and Pearce. On or about November 16, 1998, Straub and the Magdays agreed to withdraw the action before the medical claim conciliation panel for settlement purposes.[4]

On February 4, 1999, Magday and his wife ("Magdays") filed a medical malpractice action against Straub in Hawaii state court, *Arsenio J. Magday and Esther Magday v. Straub Clinic & Hospital, Inc.*, Civil No. 99–0498–02.[5] The Magdays later amended their complaint on November 2, 1999 to identify Drs. Kubota and Pearce as defendants.[6]

A settlement was reached between the Magdays and the three named defendants, Straub, Dr. Kubota, and Dr. Pearce, in the amount of $4.3 million dollars on November 9, 1999 in state circuit court.[7] The parties stipulated to settlement terms. The parties intended that the stipulation be placed on the record in state court so that it could be made available to the parties and their insurers for use in any

1. (First Amended Complaint at ¶ 14.)

2. (Letter from L. Richard Fried, Jr. to Rodney Maile dated July 31, 1998, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 6.)

3. (Letter from Frank L. Tabrah, M.D. to Tony Magbago dated August 25, 1998, Plaintiff's Separate Concise Statement in Support of Motion for Partial Summary Judgment, Exh. 13.)

4. (Letter from L. Richard Fried, Jr. to Rodney Maile dated November 16, 1998, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. C.)

5. (First Amended Complaint at ¶ 16.)

6. (*Id.* at ¶ 17.)

7. (First Amended Complaint at ¶ 20; Letter by Lynn F. York to Steven J.T. Chow Esq., November 4, 1999, Declaration of Paul F. Donsbach filed January 9, 2003; Exh. 36 (incorrectly labeled as Exh. 38 in the Declaration.))

future proceeding relating to the settlement. The matter was intended to be recorded by video tape. Plaintiff requested the record of the settlement proceedings from the state court. The state court reported that the review of the video tape revealed that it was not recorded as had been intended.[8] State circuit court records, however, indicate that the parties placed the settlement terms on the record.[9]

Plaintiff submitted a declaration of Richard Hoffman, attorney for Plaintiff Reliance, who was present at the settlement conference. Mr. Hoffman's declaration outlines the terms of the settlement, which have not been materially disputed by Defendant TDC. In his declaration, Mr. Hoffman indicates the following:

"Reliance agreed to pay $3.3 million toward the settlement, conditioned upon the parties' express stipulation to the following facts which were formally placed on the record:

(a) The parties stipulated that, at the time of settlement, Straub, Dr. Kubota, Dr. Pearce and Rhonda Perry (a Straub employee) were all defendants in the action;

(b) The parties stipulated that Straub had provided written consent to settlement on its behalf, that Dr. Kubota and Dr. Pearce had each orally consented to settlement on their behalf, and that Dr. Kubota and Dr. Pearce would each provide written consent to settlement on their behalf;

(c) The parties stipulated that Reliance had contended that TDC had not properly exhausted all of its per-claim limits and should have paid more than the $1 million being paid on behalf of Straub;

(d) The parties stipulated that Reliance's $3.3 million contribution to the settlement was made on behalf of all Insureds and Additional Named Insureds who were defendants in the action; and

(e) The parties stipulated that Reliance had reserved its rights to pursue any and all claims that it might have against TDC relating to the *Magday* claims and settlement.

9. These stipulations were placed on the record so that they would be transcribed and made available to the parties and their insurers for use in any future proceeding relating to the settlement, with the specific intention that the transcript would be available to Reliance when it brought a contribution action against TDC.

10. In addition to the need for making a written record of the terms and conditions under which Straub's insurers agreed to the Magday settlement, the stipulations were placed on the record to allow the early dismissal of Dr. Kubota and Dr. Pearce from the action.

11. The physicians insisted on being dismissed from the action immediately following the November 9, 1999 settlement conference, and Reliance agreed to this early dismissal on the condition that the transcription of the settlement record would reflect that they were defen-

8. (Transcript Unavailability Notice, Supplemental Declaration of Paul F. Donsbach Regarding February 24, 2003 Minute Order on Defendant The Doctors' Company's Motion for Summary Judgment and Plaintiff Reliance Insurance Company's (In Liquidation) Motion for Partial Summary Judgment, Exh. A.)

9. (Minutes, Supplemental Declaration of Paul F. Donsbach Regarding February 24, 2003 Minute Order on Defendant The Doctors' Company's Motion for Summary Judgment and Plaintiff Reliance Insurance Company's (In Liquidation) Motion for Partial Summary Judgment filed on March 14, 2003, Exh. B.)

dants in the litigation at the time the settlement was agreed and that each physician had consented to the settlement." [10]

Following the entry of the settlement, and consistent with the terms of the settlement thereof, the two doctors were dismissed from the lawsuit on November 19, 1999.[11] Dr. Kubota gave his written consent to settle on November 22, 1999.[12] Dr. Pearce gave his written consent to settle on December 16, 1999.[13]

On December 20, 1999, the Magdays, Straub, Plaintiff Reliance, and Defendant TDC executed a Release and Indemnification Agreement.[14] The Release set forth the terms under which the Magdays had agreed to dismiss their lawsuit. The Release expressly provided that the settlement terms placed on the record at the November 9, 1999 settlement conference "shall control any dispute over the terms and conditions of settlement and that this Release serves to supplement and not supplant the record of that settlement." [15]

On December 23, 1999, the Magdays stipulated to a dismissal with prejudice of

all claims against the remaining party, Straub.[16]

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. The moving party must show, however,

---

10. (Declaration of Richard D. Hoffman at ¶¶ 8–1, filed on January 8, 2003 and Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 49.)

11. (Stipulation for Partial Dismissal With Prejudice of Plaintiffs' First Amended Complaint Against Defendants Earl Kubota, M.D.; James Pearce, M.D.; and Rhonda Perry, PA–C filed November 19, 1999, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Opposition to Motion of Plaintiff Reliance Insurance Company (In Liquidation) for Partial Summary Judgment Filed on January 8, 2003, Exh. T.)

12. (Consent to Settlement, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. I.)

13. (Authorization to Settle, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. J.)

14. (Release and Indemnification Agreement, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. F.)

15. (*Id.* at ¶ 8.)

16. (Stipulation for Dismissal With Prejudice of All Claims Against All Parties, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Opposition to Motion of Plaintiff Reliance Insurance Company (In Liquidation) for Partial Summary Judgment Filed on January 8, 2003, Exh. U.)

that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met simply by pointing out that there is an absence of evidence to support the non-movant's case. *Id.*

If the moving party meets its burden, then the non-movant must present admissible evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995). The opposing party may not defeat a motion for summary judgment in the absence of significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. Fed. R.Civ.P. 56(e); *T.W. Elec. Serv.,* 809 F.2d at 630. Rather, the opposing party must direct the court to specific, triable facts. Fed.R.Civ.P. 56(e). Opposition evidence may consist of declarations, admissions, evidence obtained though discovery and matters judicially noticed. Fed.R.Civ.P. 56(c); *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment for the defendant is appropriate when the plaintiff fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## ANALYSIS

### A. Choice of Law

■ The instant case is a diversity action. No federal cause of action is plead.

Under the *Erie* doctrine, a federal court sitting in a diversity action is required to apply state law to questions of substantive law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Hawaii law is applicable to the instant action because the insurance contracts were entered into in the state of Hawaii, the underlying action arose in the state of Hawaii, and all the events took place in the state of Hawaii.

The Court will apply Hawaii substantive law to the parties' motions for summary judgment. Federal law, however, governs the procedure for the motions. *See Snead v. Metropolitan Property & Casualty Ins. Co.,* 237 F.3d 1080, 1093 (9th Cir.2001) (citations omitted).

### B. Legal Principles Governing the Interpretation of Insurance Contracts

■ The rules of interpretation for insurance contracts are the same as those for contracts generally. *Hawaiian Ins. & Guaranty Co., Ltd. v. Chief Clerk of the First Cir.,* 68 Haw. 336, 713 P.2d 427, 431 (1986) ("*HIG*").

■ When policy terms are unambiguous, the policy terms should be interpreted according to "their plain, ordinary, and accepted sense in common speech...." *First Ins. Co. of Haw. v. State,* 66 Haw. 413, 665 P.2d 648, 655 (1983).

■ Policy terms, however, may be ambiguous. Ambiguity exists when the insurance policy is reasonably subject to differing interpretations. *HIG,* 713 P.2d at 431 (quoting *Modern Constr., Inc. v. Barce, Inc.,* 556 P.2d 528, 529 (Alaska 1976)). When ambiguity exists, coverage provisions must be construed broadly and in favor of the insured while the exclusion provisions must be construed narrowly and against the insurer. *Id.* The objective is to

enforce the reasonable expectations applicants and intended beneficiaries have regarding the terms of the insurance policy. *Fortune v. Wong*, 68 Haw. 1, 702 P.2d 299, 306 (1985) (citation omitted).

### C. *The Insurance Policies*

Defendant provided primary insurance coverage to Straub under its Claims–Made Hospital Professional and General Liability Insurance Policy ("TDC Policy") effective from April 1, 1996 to April 1, 1997.[17] The declarations page of the TDC Policy lists the per-claim limit of liability as $1 million and the annual aggregate limit of liability as $3 million. Each additional named insured under the TDC Policy has a $1,000,000 per-claim limit of liability and a $3,000,000 annual aggregate limit of liability.[18] Drs. Kubota and Pearce were additional named insureds under the TDC Policy.[19]

Plaintiff provided Straub excess insurance under its Commercial Umbrella Liability Policy effective April 1, 1996 to April 1, 1997 ("Reliance Insurance Policy").[20] Under its policy, Plaintiff was obligated to provide coverage to the extent that the amount of liability incurred by the insured exceeded the limits of coverage provided by the TDC Policy.[21]

### D. *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS DENIED*

Defendant's position is that it was only obligated to pay $1 million, on behalf of Straub, in settlement of the Magdays' lawsuit. Plaintiff maintains Defendant was obligated to indemnify Straub and Drs. Kubota and Pearce under each insured's separate per-claim limits of liability of $1 million for a total maximum of $3 million.

Defendant argues that (1) the Magdays' tort claim represented a single claim under the TDC Policy; (2) there was no legal liability as to Drs. Pearce and Kubota and the TDC Policy obligates Defendant to pay only those amounts an insured is legally obligated to pay; (3) the doctors were not properly brought as defendants in the Magdays lawsuit because they were not named before the medical claim conciliation panel; (4) the Magdays' claim against the doctors was barred by the statute of limitations; (5) Plaintiff voluntarily made payment settling the underlying action.

### 1. Claims were made against Straub, Dr. Kubota, and Dr. Pearce in the underlying lawsuit

Defendant contends that there was only a single claim made under the TDC Policy in the Magdays lawsuit; therefore the per-claim limit of liability of $1 million applied.

The TDC Policy defines "claim" under the Hospital Professional Liability policy in Section I, Definitions, as

"a. *Written notice, demand,* cross-claim, *lawsuit,* an alternative dispute

---

17. (TDC Policy, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. G.)

18. (*Id.* at T2615; Endorsement E001996, Confidential REL000086; Declarations Page, Confidential REL000054.)

19. (*Id.* at Endorsement E00396, Confidential REL00058–61.)

20. (Reliance Insurance Policy, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. H.)

21. (*Id.* at Confidential REL000002, REL000021, REL000016, REL000025, REL000028.)

resolution, arbitration or screening panel proceeding, which is first reported to [TDC] in writing during the policy period, which asserts a demand for money or that the hospital should reduce its bill, which alleges: injury; disability; sickness; disease; or death of a patient arising from your rendering or failing to render hospital and professional services, on or after the retroactive date but prior to the termination of this policy; or

b. Any insured, or any insured's legal representative's written notice to [TDC], which is first reported in writing during the policy period, that a demand, cross-claim, lawsuit, an alternative dispute resolution, arbitration or screening panel proceeding, on or after the retroactive date but prior to the termination of this policy may be made against any insured by the patient or patient's legal representative ..." [22]

TDC's obligation to pay is subject to a hospital professional liability per-claim limit of liability and a hospital professional liability annual aggregate limit of liability.[23] The TDC policy defines the Hospital Professional Liability Per–Claim Limit of Liability as,

"The HOSPITAL PROFESSIONAL LIABILITY PER–CLAIM LIMIT OF LIABILITY stated on the Declarations Page or an applicable endorsement in effect at the time a claim is first reported in writing to [TDC] ... is the maximum amount [TDC] will pay for a claim." [24]

The TDC Policy defines the annual aggregate limit of liability as "the maximum amount [TDC] will pay for all claims first reported to [TDC] during any one policy period. There is only one hospital professional liability annual aggregate limit of liability per policy period." [25]

The Limits of Liability section of the TDC Policy addresses both the per-claim and annual aggregate limits of liability. It states,

*"Two limits of liability apply to the amount [TDC] will pay for all legal liability arising from the medical treatment of a patient, regardless of the number of named insureds,* on any insured's behalf under Section II Part 1 of this policy: (A) the hospital professional liability per-claim limit of liability and (B) the hospital professional liability annual aggregate limit of liability." [26]

The TDC Policy applies the following provisions to the Hospital Professional Liability Per–Claim Limit of Liability:

(i). *All legal liability arising from the medical treatment of a patient, regardless of the nature or number of causes of action alleged,* and/or the nature of the hospital and professional services rendered or which should have been rendered, and/or regardless of the number of patient visits and/or the treatment period, and/or regardless of the number of claimants, it *will be considered a single claim and only one hospital professional liability per-claim limit of liability applies;*

(ii). Two or more allegations or causes of action arising from the same act

22. (TDC Policy at T2601, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. G) (emphasis added).

23. (*Id.* at T2612.)

24. (*Id.* at T2605.)

25. (*Id.*)

26. (*Id.* at T2614) (emphasis added).

or omission to act, or the same series of acts or omission to act in rendering or failing to render hospital and professional services to one person will be considered to be a single claim and only one hospital professional liability per-claim limit of liability applies ...

(iv). *All legal liability arising from the medical treatment of a patient,* regardless of the number of conditions or diagnoses involving that patient, will be considered as arising from one act of rendering or failing to render hospital and professional services regardless of the number of treatments and/or the treatment period and *will be considered to be a single claim and only one hospital professional liability per-claim limit of liability applies.*[27]

The exclusions section of the TDC Policy mirrors Sections (i) and (ii) above.[28]

The Limits of Liability section further provides that individual doctors, if named as additional named insureds under the policy, have their own per-claim limits of liability and annual aggregate limits of liability. The TDC Policy states,

"1. The named insured shown on the Declarations Page has one hospital professional liability per-claim limit of liability and one hospital professional liability annual aggregate limit of liability as stated on the Declarations Page. The named insured's hospital professional liability per-claim limit of liability and hospital professional liability annual aggregate limit of liability are shared with all additional insureds. The named insured's limits of liabil-

ity are not available as added or supplemental coverage for any additional named insured, additional insured, or any other insured under this policy.

2. *If a physician is shown on the Declarations Page or by an endorsement as an additional named insured the physician has one hospital professional liability per-claim limit of liability and one hospital professional liability annual aggregate limit of liability as stated on the applicable Declarations Page or endorsement.* The physician's limits of liability are not available as added or supplemental coverage for any additional named insured, additional insured, or any other insured under this policy."[29]

Based on the above provisions, Defendant argues that the Magdays lawsuit constituted a single claim and the doctors' per-claim limits of liability were not triggered because the Magdays sought damages based on the medical treatment of a single patient on a single date. Defendant's position is that although the Magdays filed a first amended complaint in the underlying suit naming Drs. Kubota and Pearce as defendants, there was still only one claim under the policy because the Magdays sought to hold Drs. Kubota and Pearce liable for the same alleged negligent treatment.

Plaintiff, however, points out that claims were in fact brought against Straub and the two individual doctors. Plaintiff's position is that the separate per-claim limits of liability were triggered once a lawsuit, written notice, or demand for money based on medical malpractice was asserted

---

27. (*Id.* at T2605–06) (emphasis added).

28. (*Id.* at T2618.)

29. (*Id.* at T2615) (emphasis added).

against any insured. As to the language specifying that a single per-claim limit of liability applies regardless of the number of defendants or the number of causes of action alleged, Plaintiff interprets the language to mean that *Straub* had a per-claim limit of liability of $1 million regardless of the number of defendants or causes of action alleged. Plaintiff maintains that the language has no bearing on the separate per-claim limit of liability for the *doctors*.

Reading the TDC Policy provisions as a whole, Plaintiff's position is persuasive. The Magdays' initial complaint sued Straub under the theory of respondeat superior and included unnamed John Does. The Magdays then amended their complaint to specifically name Drs. Kubota and Pearce as defendants.

Both Plaintiff Reliance and Defendant TDC admit that claims were asserted against the physicians under the TDC Policy in the state proceeding. Defendant's Vice President of Claims John Suesens stated in his deposition testimony that claims had been made against Drs. Kubota and Pearce under the TDC Policy.[30] Prior to the filing of the state lawsuit, on August 25, 1998, Straub's risk management medical director Dr. Frank L. Tabrah notified Defendant TDC that although the doctors were not named, the case was also against Drs. Kubota and Pearce.[31] After the filing of the lawsuit but prior to the amendment to specifically name the two doctors,

Straub's independent counsel Jeffrey S. Portnoy also stated that allegations of negligence were reasonably asserted against Straub and at least two physicians based on the Magdays' complaint.[32]

Moreover, Attorney Fried for the Magdays, stated in his deposition, "[M]y view was that there were [doctors] responsible as well, but since they were employees of Straub, I didn't need to specifically name them."[33]

The position of Plaintiff Reliance, the excess carrier, is supported by Hawaii case law. In *St. Paul Fire and Marine Ins. Co. v. Hawaiian Ins. & Guaranty Co.*, 2 Haw.App. 595, 637 P.2d 1146 (1981), the plaintiff in the underlying case brought a wrongful death action against physicians alleging that the physicians negligently administered anesthetic to the decedent. In a subsequent lawsuit, the primary and excess insurance companies disputed who was responsible for a portion of the damages. The lower court held that the primary insurer was responsible for the amount in question. The appellate court affirmed.

The dispositive issue in the *St. Paul* case was the definition of "claim" under the primary insurer's policy. Similar to Defendant's argument here, the primary insurer in *St. Paul* argued that only one limit of liability applied because there was

---

**30.** (Deposition of John Suesens at 161:9–14, Plaintiff's Separate Concise Statement in Support of Motion for Partial Summary Judgment, Exh. 1.)

**31.** (Letter from Frank L. Tabrah, M.D. to Tony Magbago dated August 25, 1998, Plaintiff's Separate Concise Statement in Support of Motion for Partial Summary Judgment, Exh. 13.)

**32.** (Letter from Jeffrey S. Portnoy to multiple parties dated August 27, 1999, Plaintiff Reli-

ance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 27.)

**33.** (Deposition of L. Richard Fried, Jr. at 9, Supplemental Declaration of Paul F. Donsbach in Support of Plaintiff Reliance Insurance Company's (In Liquidation) Motion for Partial Summary Judgment, Exh. A.)

one death and therefore, one claim. The appellate court disagreed.

"It appears to us that the three separate acts of negligence alleged as causes of the death of the claimant are each claims, according to the commonly accepted meaning of that word in the law. Certainly the only 'claims' against the two involved physicians individually, as distinguished from their partnership responsibility, is for their separate individual acts. If they were insured by different insurers, there could be no argument but that a 'claim' had been stated against each. It is only by virtue of their being insured under the same policy that the argument is made that there are not separate 'claims' against them."

*Id.* at 1147.

Defendant argues that Plaintiff's reliance on *St. Paul* is misplaced. Defendant points out that the court defined "claim" broadly because the insurance policy did not contain a definition of "claim." It is true that unlike the policy in *St. Paul,* the TDC Policy defines claim and states that the per-claim limit of liability applies "regardless of the nature or number of causes of action alleged."[34] When this clause, however, is considered in conjunction with the Magdays' complaints and the separate per-claim limits of liability for the physicians, it is clear that claims were asserted against Straub, Dr. Kubota, and Dr. Pearce in the underlying lawsuit.

### 2. Drs. Kubota and Pearce were legally liable at settlement

■ Defendant argues that even if there was more than a single claim, the doctors must first be legally obligated before their per-claim limits of liability are applicable and since no legal liability was established against Drs. Kubota and Pearce, it was only responsible for the $1 million policy limit on behalf of Straub.

The TDC Policy states,

"[TDC] will pay on behalf of any insured all sums which any insured shall be *legally obligated to pay as damages for a claim* which alleges bodily injury arising from any insured's rendering or failing to render the hospital and professional services to which this insurance applies, but excluding any legal liability for punitive and exemplary damages or statutory or other fines."[35]

In support of its position, Defendant argues that the doctors were not named defendants. Defendant notes that Drs. Kubota and Pearce were dismissed from the Magday lawsuit on November 19, 1999, after settlement was reached but before the Release and Indemnification Agreement was executed. Defendant attaches significance to the fact that the release agreement executed on December 20, 1999 does not mention the doctors. The release was executed by only Straub, Defendant TDC, and Plaintiff Reliance. Attorney Fried, representing the Magdays in the underlying lawsuit, however, states that it was his intention in executing the release to also release the doctors from liability.[36]

Plaintiff points out that the doctors were named defendants in the proceeding when settlement was reached. The release de-

---

34. (TDC Policy at T2605, Defendant's Separate and Concise Statement of Facts, Exh. G.)

35. (TDC Policy at T2612, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. G) (emphasis added).

36. (Deposition of L. Richard Fried, Jr. at 22, Supplemental Declaration of Paul F. Donsbach in Support of Plaintiff Reliance Insurance Company's (In Liquidation) Motion for Partial Summary Judgment, Exh. A.)

fers to the settlement terms as controlling. It is clear that the claims were settled on behalf of Drs. Kubota and Pearce as well as Straub. The state circuit court judge permitted the Magdays to amend their complaint to specifically name Drs. Kubota and Pearce as defendants. The doctors were represented by counsel for settlement purposes and counsel for Dr. Kubota was present at the November 9, 1999 settlement conference.[37]

At the settlement conference, the parties stipulated that at the time of settlement, Drs. Kubota and Pearce, were defendants in the action.[38] The parties also stipulated that Plaintiff Reliance's $3.3 million contribution to the settlement was made on behalf of all Insureds and Additional Named Insureds who were defendants in the action.[39] Where the release agreement expressly provided that the settlement terms placed on the record at the November 9, 1999 settlement conference would be binding on any dispute relating to the settlement, the settlement is controlling.[40]

 There is no material issue of fact as to the inclusion of Drs. Kubota and Pearce in the settlement. Defendant has not proffered any credible evidence demonstrating a contrary inference. Any objec-

tion that Defendant TDC had to the naming of the doctors in the state suit and the inclusion of the doctors in the settlement was ruled on by the state judge. Defendant TDC waived its objection when it did not appeal the ruling and entered into the settlement.

**3. The doctors were named before the medical claim conciliation panel. The lack of a hearing for Drs. Kubota and Pearce is not determinative as to the doctors' legal liability.**

 Defendant also argues that Drs. Kubota and Pearce could not have been held legally liable because they were never given the opportunity to have allegations against them determined by a medical claim conciliation panel ("MCCP"). According to Defendant, submitting claims against Drs. Kubota and Pearce before the MCCP was a statutory prerequisite to filing a medical malpractice lawsuit against the doctors.

Defendant TDC, however, agreed not to raise the lack of a MCCP hearing as a defense to any subsequent hearing in the state court proceeding.[41] In addition, the state circuit court heard argument on this

---

**37.** (Minutes, Supplemental Declaration of Paul F. Donsbach Regarding February 24, 2003 Minute Order on Defendant The Doctors' Company's Motion for Summary Judgment and Plaintiff Reliance Insurance Company's (In Liquidation) Motion for Partial Summary Judgment filed on March 14, 2003, Exh. B.)

**38.** (Declaration of Richard D. Hoffman at ¶ 8, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 49.)

**39.** (*Id.*)

**40.** (Release and Indemnification Agreement at ¶ 8, Defendant The Doctors' Company's

Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. F.)

**41.** (Letter to Ms. Toni Magbago, The Doctors' Company and Mr. Paul Falcetta, Reliance National from Peter C. P. Char dated December 17, 1998, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 16 & Deposition of L. Richard Fried, Jr. at 10–11, Supplemental Declaration of Paul F. Donsbach in Support of Plaintiff Reliance Insurance Company's (In Liquidation) Motion for Partial Summary Judgment, Exh. A.)

issue and granted the Magdays' motion to amend their complaint to name Drs. Kubota and Pearce as defendants.[42] Defendant TDC cannot now raise the lack of hearing as a defense. Settlement prevented a disposition of the merits. The agreement to settle and the rulings by the state court leading up to settlement have become the law of the case.

The MCCP is a "comprehensive system of medical malpractice dispute resolution," *Dubin v. Wakuzawa*, 89 Hawai'i 188, 970 P.2d 496, 505 (1999), created to "review and render findings and advisory opinions on the issues of liability and damages in medical tort claims against health care providers." Haw.Rev.Stat. § 671–11(a). The goal of the MCCP is to encourage early settlement of claims and to weed out non-meritorious claims. *Garcia v. Kaiser Found. Hospitals*, 90 Hawai'i 425, 978 P.2d 863, 876–77 (1999) (citation omitted). It is designed to promote cost-efficiency in dealing with medical tort claims. *Lum v. Queen's Medical Center*, 69 Haw. 419, 744 P.2d 1205, 1207 (1987) (citation omitted). It also aims to give the parties confidentiality prior to the filing of a suit in court. *Id.*

Provisions regarding MCCP are contained in Hawaii Revised Statutes § 671–12, which states, in part,

"(a) Effective July 1, 1976, any person or the person's representative claiming that a medical tort has been committed shall submit a statement of the claim to the medical claim conciliation panel before a suit based on the claim may be commenced in any court of this State. Claims shall be submitted to the medical claim conciliation panel in writing. The claimant shall set forth facts upon which the claim is based and shall include the names of all parties against whom the claim is or may be made who are then known to the claimant.

(b) Within five business days thereafter the panel shall give notice of the claim and the statement of the claim, by certified mail, to all health care providers and others who are or may be parties to the claim and shall furnish copies of written claims to such persons. Such notice shall set forth a date, not more than twenty days after mailing the notice, within which any health care provider against whom a claim is made shall file a written response to the claim, and a date and time, not less than five days following the last date for filing a response, for a hearing of the panel. Such notice shall describe the nature and purpose of the panel's proceedings and shall designate the place of the meeting. The times originally set forth in the notice may be enlarged by the chairperson, on due notice to all parties, for good cause."

Haw.Rev.Stat. § 671–16, "Subsequent litigation; excluded evidence," provides, in part,

"The claimant may institute litigation based upon the claim in an appropriate court only after a party to a medical claim conciliation panel hearing rejects the decision of the panel, or after the eighteen-month period under section 671–18 has expired."

According to Defendant, a plaintiff is barred from claiming damages for the errors or omissions of a health care provider

---

**42.** (Order Granting Plaintiffs' Motion for Leave to File First Amended Complaint Filed October 29, 1999 & Defendant Straub Clinic & Hospital, Inc.'s Memorandum in Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint Filed October 29, 1999, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Opposition to Motion of Plaintiff Reliance Insurance Company (In Liquidation) for Partial Summary Judgment Filed on January 8, 2003, Exhs. R & S.)

unless that health care provider is named in the hearing before the MCCP. If a party is not named, it has no opportunity to establish that he or she is not liable for the alleged injuries. Defendant's position is that until there's been an MCCP finding of liability, there is no liability on behalf of the unnamed physician.

██ The MCCP requirement is a precondition to suit and determinations of the panel have no preclusive effect on subsequent litigation in state or federal court. *Hum v. Dericks,* 162 F.R.D. 628, 636 (D.Haw.1995); *see Garcia,* 978 P.2d at 877 (quoting *Tobosa v. Owens,* 69 Haw. 305, 741 P.2d 1280, 1286–87 (1987)).

Here, the Magdays submitted a medical claim against Straub and the doctors to the MCCP on July 31, 1998.[43] The letter containing the claim to the MCCP stated that Straub was being sued under the theory of respondeat superior and agency principles on behalf of the acts and omissions of its agents, servants, and employees, including Drs. Kubota and Pearce. (*Id.* at 1.) The letter of claim by Attorney Fried stated that "[c]laimants believe that Dr. Kubota, Dr. Pearce, Dr. Chong and R. Perry were agents, servants, or employees of respondent Straub. *If that is not correct, then they are named herein as individual respondents.*"[44] It is clear that there was a de facto naming of Drs. Kubota and Pearce and they were part of the theory of negligence before the MCCP.

On or about November 16, 1998, Straub and the Magdays agreed to withdraw the action before the panel for settlement purposes.[45] On February 4, 1999, after the action was withdrawn from the MCCP, the Magdays filed suit in state court. Drs. Kubota and Pearce were added to the Magday lawsuit on November 2, 1999.

It is clear from Attorney Fried's letter to the MCCP that claims against Straub and against Drs. Kubota and Pearce, based on a respondeat superior theory, were presented to the MCCP. The MCCP did not make a determination of liability as to any of the defendants because the parties withdrew the action before the panel for settlement purposes.

No appeal was filed from the state circuit court judge's granting of the amendment to the complaint to add Drs. Kubota and Pearce. As Defendants in the state action, Drs. Kubota and Pearce agreed to and then signed written consents to the settlement agreement. Any objection Defendant may have had to the amendment allowing the doctors to be named as defendants in the state action was waived when TDC and the doctors consented to settlement. Defendant cannot raise the issue of the doctors' participation in the MCCP proceeding at this late date.

### 4. Magdays' claims against Drs. Kubota and Pearce were not barred by the statute of limitations

██ Defendant also argues that legal liability could not have been established against the doctors because the first amended complaint filed by the Magdays on November 2, 1999 was untimely under Haw.Rev.Stat. § 657–7.3.

---

43. (Letter from L. Richard Fried, Jr. to Rodney Maile dated July 31, 1998, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 6.)

44. (*Id.*) (emphasis added).

45. (Letter from L. Richard Fried, Jr. to Rodney Maile dated November 16, 1998, Defendant The Doctors' Company's Separate and Concise Statement of Facts in Support of its Motion for Summary Judgment, Exh. C.)

Defendant cannot relitigate issues that were waived or merged into the settlement agreement when the doctors signed written consents at settlement.

Haw.Rev.Stat. § 657–7.3 provides, "No action for injury or death against a ... physician ... duly licensed or registered under the laws of the State ... based upon such person's alleged, professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, shall be brought more than two years after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in any event not more than six years after the date of the alleged act or omission causing the injury or death."

The Magdays' injury occurred in September 1996, which is more than two years prior to the filing of the Magdays' first amended complaint. Plaintiff contends that there is no statute of limitations problem because of the relation back doctrine in Haw. R. Civ. P. 15(c)(3).

Haw. R. Civ. P. 15 states, "(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when ...

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and the party to be brought in by amendment (A) has received such notice of the institution of the action that the party

will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

According to Plaintiff, the amendment to the Magdays' complaint naming Drs. Kubota and Pearce was appropriate under Haw. R. Civ. P. 15(c)(3). Defendant, however, argues that the relation back doctrine is not applicable as Magday's injuries occurred on September 4, 1996 and Magdays' initial complaint was not filed until February 4, 1999, approximately five months after the statute of limitations had arguably run.

Defendant's argument is not persuasive. The record reveals that the statute of limitations defense was waived at the time the claims were removed from the MCCP. Attorney C.P. Char, representing Straub and the two doctors in a letter dated December 17, 1998 to Defendant TDC clearly stated the statute of limitations was waived with the agreement of Defendant TDC:

"After responding to the claim by denying all claims of negligence, we reviewed the records and spoke to Dr. Kubota, Ms. Perry, and the emergency department nurse. We also consulted on an informal basis with an emergency medicine physician who reviewed the records for us. Based on that work-up we recommended to Straub Risk Management and The Doctors' Company that we enter into an agreement with the Claimants' counsel to withdraw the MCCP claim and to attempt settlement. *This was done by agreeing not to raise the statute of limitations defense or the lack of an MCCP hearing as defenses to any subsequent litigation.*"[46]

---

46. (Letter to Ms. Toni Magbago, The Doctors' Company and Mr. Paul Falcetta, Reliance National from Peter C.-P. Char dated December 17, 1998, Plaintiff Reliance Insurance Compa-

As explained earlier, the claim before the MCCP sufficiently named the doctors. The claims against the doctors arose out of the same transactions as those against Straub. The doctors were aware of the Magdays lawsuit and could have expected to be named in the lawsuit at a later time. In fact, they were named as defendants in the lawsuit eventually. Any defense to the statute of limitations that arguably remained after the earlier waiving of it had to be raised at that time, prior to the agreement of the doctors to settlement.

Magdays' claims against Drs. Kubota and Pearce were not barred by the statute of limitations.

### 5. Plaintiff was not a volunteer at settlement

 Lastly, Defendant argues that Plaintiff is not entitled to contribution, indemnity, and subrogation because it voluntarily made payment on the insureds' behalf.

 An insurance company is not a volunteer if it makes payment under a legal threat. *Alamida v. Wilson,* 53 Haw. 398, 495 P.2d 585, 590 (1972); *First Ins. Co. of Hawaii v. Continental Casualty Co.,* 466 F.2d 807, 810–11 (9th Cir.1972).

During settlement discussions in the underlying lawsuit, Plaintiff offered to settle the dispute and pay 50 percent of the settlement amount under a reservation of rights. (Letter from Richard D. Hoffman to Lynn F. York dated September 1, 1999, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 28.) Defendant rejected the offer. (Letter from Lynn F. York to Richard D. Hoffman dated August 17, 1999; Letter from Lynn F. York to Jeffrey S. Portnoy dated September 30, 1999, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exhs. 26, 30.)

In settlement discussions with Plaintiff's counsel, however, Defendant's counsel suggested that if Plaintiff settled the Magdays action for amounts above what it believed it was obligated to pay, it could pursue remedies at a later time. (Letter from Lynn F. York to Richard D. Hoffman dated August 17, 1999, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 26.)

At the settlement conference, the parties stipulated that Plaintiff reserved its rights to pursue any and all claims it might have against Defendant relating to the Magdays' claims and settlement. (Declaration of Richard D. Hoffman at ¶ 8, Plaintiff Reliance Insurance Company's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 49.) Further, the release agreement signed by the parties expressly provided that the settlement terms placed on the record at the November 9, 1999 settlement conference would be binding on any dispute relating to the settlement. (Release and Indemnification Agreement, Defendant The Doctors' Company's Separate and Concise

ny's (In Liquidation) Separate Concise Statement of Genuine Issues of Material Fact in Opposition to Defendant The Doctors' Company's Motion for Summary Judgment, Exh. 16.) (Emphasis added).

Statement of Facts in Support of its Motion for Summary Judgment, Exh. F.)

It is clear that Plaintiff made payment under a reservation of rights and did not voluntarily settle the underlying lawsuit.

Defendant's Motion for Summary Judgment is DENIED.

## E. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment on its First (Express and Equitable Subrogation), Second (Equitable Contribution), and Third Claim for Relief (Indemnity).[47]

### 1. Plaintiff is entitled to subrogation

 In its First Claim for Relief, Plaintiff seeks to recover through express and equitable subrogation.

Plaintiff's policy provides for express subrogation. It states, "[Plaintiff] shall be subrogated to the extent of any payment hereunder to all the Insured's rights of recovery therefor." (Reliance Insurance Policy at REL000031, Defendant's Separate and Concise Statement of Facts, Exh. H.)

 Equitable subrogation, on the other hand, is "broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter." *Alamida*, 495 P.2d at 589 (citation omitted); *see also* Restatement, Restitution § 162. Subrogation is proper between a primary and excess insurer.[48] *Reliance Nat'l Indemnity Co. v. General Star Indemnity Co.*, 72 Cal.App.4th 1063, 1078, 1080, 1082, 85 Cal.Rptr.2d 627 (1999) (noting that where different insurance carriers cover different risks and liabilities as between excess and primary insurers, they may proceed against one another for reimbursement by subrogation).

Summary judgment is GRANTED as to Plaintiff's First Claim for Relief (Express and Equitable Subrogation).

### 2. Plaintiff is not entitled to equitable contribution

 Plaintiff seeks a $2 million recovery under a theory of contribution. Defendant argues that there is no contribution between a primary and excess insurer without an agreement to the contrary.

Although there is no case law directly on point in the state of Hawaii, there is case law in other jurisdictions that provide guidance. In *Reliance Nat'l Indemnity Co. v. General Star Indemnity Co.*, 72 Cal.App.4th 1063, 1078, 1080, 85 Cal. Rptr.2d 627 (1999), a primary insurer brought suit against an excess insurer seeking indemnity or contribution for costs incurred in an underlying personal injury action brought by an audience member at a music festival. The Court rejected the primary insurer's claim for contribution. *Id.* at 1080–81, 85 Cal.Rptr.2d 627.

The court noted that as a general rule, absent an agreement, there is no contribution between a primary and excess carrier. *Id.* at 1080, 85 Cal.Rptr.2d 627. The court

---

47. As summary judgment is granted in favor of Plaintiff, Plaintiff's request for an Order pursuant to Fed.R.Civ.P. 56(d) is DENIED as MOOT.

48. Plaintiff cites *Sentinel Ins. Co. v. First Ins. Co. of Hawai'i*, 76 Hawai'i 277, 875 P.2d 894 (1994), to stand for the proposition that an insurer has the right to seek subrogation and contribution against another insurer for payments made beyond the first insurer's share of coverage. *Sentinel* cannot be read to stand for this proposition. The court's only reference to subrogation in its decision is a notation in a footnote that a party was subrogated to and assigned rights out of an insurer's refusal to defend. 875 P.2d at 903 n. 5.

explained that the reason for this rule is that contribution applies only when co-insurers cover the same insured and the same particular risk at the same level of coverage. *Id.* Primary and excess carriers do not share the same risk or coverage. *Id.* at 1081, 85 Cal.Rptr.2d 627.

Plaintiff distinguishes *Reliance Nat'l* by arguing that the case stands for the proposition that a primary insurer cannot recover in contribution against an excess carrier and not vice versa. In support of its argument, Plaintiff states that it is a sensible rule because a primary insurer can tender its limits without being affected by an excess insurer's breach. By contrast, an excess insurer depends upon the primary insurer to comply with its policy obligations. Where a primary insurer pays too little, the excess insurer may need to pay the disputed coverage amount and pursue its rights in contribution. Plaintiff argues that to do otherwise would be to encourage insurance carriers to litigate questionable claims among themselves, leaving the insured in a position in which he or she may have no coverage at all.

Although Plaintiff's policy argument is persuasive, it seems clear that *Reliance Nat'l* stands for the general proposition that primary and excess insurers cannot bring a claim of contribution against one another, regardless of whether it is the primary or excess carrier who brings the claim. In either situation, the policy reason against contribution remains the same—the insurers do not cover the same risk at the same coverage.

Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's Second Claim for Relief (Equitable Contribution) is DENIED.

### 3. Plaintiff's claim for indemnity is DENIED as MOOT

In its Third Claim for Relief (Indemnity), Plaintiff pleads a claim for indemnity in the alternative to its claims for express and equitable subrogation and equitable contribution. The Court GRANTS Plaintiff's claim for express and equitable subrogation, therefore Plaintiff's indemnity claim is DENIED as MOOT.

### F. PLAINTIFF'S ALTERNATE MOTION FOR A CONTINUANCE UNDER FED. R. CIV. P. 56(f) IS DENIED

Alternatively, Plaintiff requests a continuance under Fed.R.Civ.P. 56(f) to proceed with discovery on Defendant's volunteer argument and its breach of the implied covenant of good faith and fair dealing claim. The Court has already rejected Defendant's volunteer argument and Plaintiff withdrew its Breach of the Implied Covenant of Good Faith and Fair Dealing claim on August 20, 2003.

Plaintiff's Motion for a Continuance Under Fed.R.Civ.P. 56(f) is therefore DENIED as MOOT.

### CONCLUSION

In accordance with the foregoing,

(1) Defendant's Motion for Summary Judgment is DENIED.

(2) Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

Summary judgment is GRANTED as to Plaintiff's First Claim for Relief (Express and Equitable Subrogation).

Summary judgment is DENIED as to Plaintiff's Second Claim for Relief (Equitable Contribution).

Plaintiff's Third Claim for Relief (Indemnity) is DENIED as MOOT.

Plaintiff did not move for summary judgment as to its Fourth Claim for Relief (Declaratory Relief).

Plaintiff withdrew its Fifth Claim for Relief (Breach of the Implied Covenant of Good Faith and Fair Dealing). Plaintiff's claim for punitive damages based on its Fifth Claim for Relief is therefore DENIED as MOOT.

(3) Plaintiff's Motion for a Continuance Under Fed.R.Civ.P. 56(f) is DENIED as MOOT.

(4) Plaintiff is awarded $2 million in subrogation and reasonable attorneys' fees for this litigation.

IT IS SO ORDERED.

## ORDER DENYING DEFENDANT THE DOCTORS' COMPANY'S MOTION FOR RECONSIDERATION OF THE ORDER FILED SEPTEMBER 25, 2003 ENTITLED:

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FILED ON 11/25/02, AND RECOGNIZING DEFENDANT'S CROSS–MOTION FILED ON 2/6/03 AS MOOT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FILED ON 1/8/03, AND DENYING PLAINTIFF'S MOTION FOR A CONTINUANCE UNDER FED. R. CIV. P. 56(f) RAISED IN ITS MEMORANDUM OF OPPOSITION OF 2/4/03 TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant The Doctors' Company ("Defendant" or "TDC") challenges only a portion of the Order denying its Motion for Summary Judgment filed on November 25, 2002, and granting in part Plaintiff Reliance Insurance Company's ("Plaintiff" or "Reliance") Motion for Partial Summary Judgment filed on January 8, 2003. Specifically, TDC seeks withdrawal of those portions of the Court's Order granting Reliance's Motion for Partial Summary Judgment as to subrogation and the denial of TDC's Motion for Summary Judgment, including the award of $2 million in subrogation and attorneys' fees.

## STANDARD OF REVIEW

██ Rule 59(e) of the Federal Rules of Civil Procedure permits a district court to reconsider and amend a previous order. The Rule, however, offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.2003) (citation omitted).

██ It is well settled in the Ninth Circuit that a successful motion for reconsideration must accomplish two goals. First, the motion must demonstrate some reason why the court should reconsider its prior decision. *See Na Mamo O 'Aha 'Ino v. Galiher*, 60 F.Supp.2d 1058, 1059 (D.Hawai'i 1999) (citation omitted). Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Id.* (citation omitted).

Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact in order to prevent manifest injustice. *See Mustafa v. Clark County School District*, 157 F.3d 1169, 1178–79 (9th Cir.1998); *Great Hawaiian Financial Corp. v. Aiu*, 116 F.R.D. 612, 616 (D.Hawai'i 1987), *rev'd on other grounds*, 863 F.2d 617 (9th Cir. 1988). The District of Hawaii has implemented these standards in Local Rule 60.1.

## ANALYSIS

### A. *Previously unavailable evidence*

■ Defendant TDC maintains that the recently obtained deposition testimonies of Layton C. Severson and Willis Hap Knutson constitute new evidence, which previously was unavailable, and which warrants the Court's reconsideration of its September 25, 2003 Order. The Severson and Knutson depositions do not constitute facts. Instead they contain legal theories regarding the duties to defend and indemnify, which may be found in Hawaii caselaw, available to TDC at the time it filed its Motion for Summary Judgment.

TDC's argument that it is not liable to indemnify its insureds until there is a demonstration that the insureds were liable is unavailing. As the Court explained in the September 25, 2003 Order, TDC, through settlement, waived that requirement.

### B. *Court error in finding that Drs. Kubota and Pearce were legally liable at settlement*

■ To warrant reconsideration of the Court's September 25, 2003 Order, TDC must show that the Court "committed clear error or the initial decision was manifestly unjust." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993). Reiteration of arguments originally made in support of, or in opposition to, a motion for summary judgment do not provide a valid basis for reconsideration. *See All Hawaii Tours, Corp. v. Polynesian Cultural Center,* 116 F.R.D. 645, 650 (D.Haw.1987) (citation omitted), *rev'd in part on other grounds, aff'd in part without opinion,* 855 F.2d 860, 1988 WL 86203 (9th Cir.1988).

TDC, in its Motion for Reconsideration, reiterates the arguments regarding Reliance's failure to establish the legal liability of Drs. Kubota and Pearce, which it previously asserted in its Motion for Summary Judgment, and which this Court rejected in its Order filed September 25, 2003.

### C. *TDC's obligation to pay more than two limits of liability*

■ A motion for reconsideration is not a proper mechanism for presenting new legal theories that the movant failed to raise with respect to the underlying motion for summary judgment. *See Carroll,* 342 F.3d at 945; *All Hawaii Tours, Corp.,* 116 F.R.D. at 650 (citing *Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926, 933 (7th Cir.1986), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1351, 94 L.Ed.2d 521 (1987)). The movant is not permitted to present new arguments following its loss at summary judgment. *All Hawaii Tours, Corp.,* 116 F.R.D. at 650 (citation omitted). Failure to raise issues in opposition to summary judgment functions as a waiver. *Id.* (citing *Publishers Resource v. Walker–Davis Publications,* 762 F.2d 557, 561 (7th Cir.1985)).

TDC's argument that it cannot, under the facts of the instant case, be obligated to pay more than two limits of liability is a new argument that TDC could have raised with respect to the underlying motions for summary judgment. In failing to raise this argument at summary judgment, TDC waived its right to assert the argument following the Court's ruling on the summary judgment motions, in the instant motion for reconsideration. *See id.*

TDC's argument also is substantively unsupported. TDC misconstrues the Court's September 25, 2003 Order as finding that Straub's liability was exclusively based on the hospital's status as the employer of Drs. Pearce and Kubota. In fact, the portion of the Court's Order that TDC quotes in its Motion for Reconsideration indicates a broader basis of liability: " 'Straub was being sued under the theory

of respondeat superior and agency principles on behalf of the *acts and omissions of its agents, servants, and employees, including Drs. Kubota and Pearce.'* " (Def. Mot. for Reconsideration at 24–25.) In addition to indicating that Straub was vicariously liable for the acts of its agents, servants, and employees, including, but not limited to, Drs. Kubota and Pearce, the Court, in its September 25, 2003 Order, noted that the civil complaint underlying the settlement at issue contained allegations of negligence against Straub. TDC's argument that it cannot, under the Court's findings, be obligated to pay more than two limits of liability is based on an incorrect reading of the Court's September 25, 2003 Order.

### D. *Apportionment of liability*

■ Section 663–12 of the Hawaii Revised Statutes provides that "[w]hen there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares …." TDC's contention, that there could have been a disproportionate distribution of fault among the parties to the settlement, cannot be raised now. Any objection TDC had to an equal distribution among Straub and Drs. Kubota and Pearce for their common liability should have been raised at settlement. TDC waived its objection when it entered into the settlement.

### E. *Reliance's entitlement to subrogation to the positions of Drs. Kubota and Pearce*

TDC, in its Motion for Reconsideration, argues that Reliance cannot be subrogated to the positions of Drs. Kubota and Pearce because Reliance only made payment on behalf of Straub. This is a new argument

and is not properly raised in a motion for reconsideration. *See Carroll*, 342 F.3d at 945 (holding that it is improper to present new legal theories not raised with respect to the underlying motion for summary judgment in a motion for reconsideration); *All Hawaii Tours, Corp.*, 116 F.R.D. at 650 ("Failure to raise issues in opposition to summary judgment functions as a waiver.") (citation omitted). In any event, as the Court indicated throughout its September 25, 2003 Order, the facts are clear that Drs. Kubota and Pearce, in addition to Straub, were contemplated by Reliance as defendants in the underlying action and settlement. The Court's Order properly held that Reliance is entitled to be subrogated to the positions of Drs. Kubota and Pearce, as well as Straub.

### F. *TDC's bad faith argument*

TDC argues that Reliance is not entitled to equitable subrogation because of its alleged bad faith with respect to the action underlying the settlement. This is another new argument, improperly raised in a motion for reconsideration. *See Carroll*, 342 F.3d at 945; *All Hawaii Tours, Corp.*, 116 F.R.D. at 650 (citation omitted). Regardless, Reliance's Confidential Settlement Statement to the settlement judge does not appear to rise to the level of bad faith, as alleged by TDC.

### G. *Attorneys' fees*

■ TDC argues that the Court improperly awarded Reliance attorneys' fees. As the Court's September 25, 2003 Order indicated, the Court applied Hawaii substantive law in evaluating the parties' respective motions for summary judgment. Federal courts sitting in diversity apply the law of the forum state regarding an award of attorneys' fees. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir.2000) (citations omitted). Section 431:10–242 of the Hawaii Revised Statutes provides as follows:

"Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy *shall be* awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy." (Emphasis added.)

The fact that neither party had briefed the issue of Reliance's entitlement to attorneys' fees prior to the Court's September 25, 2003 Order is of no import. The Court, in ordering TDC to pay benefits under its policy to Reliance, was required by § 431:10–242 to award Reliance reasonable attorneys' fees.

### CONCLUSION

In accordance with the foregoing, Defendant's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.